PETER THOMPSON *vs.* GUNDER HANSON and another.

December 21, 1881.

**Promissory Note—Consideration—Surrender of Entry on Public Land.** Prior to April 6, 1878, one Holm had a valid and subsisting entry at the United States land-office, at Worthington, of a certain quarter-section of land, under the timber-culture acts of congress. He had delivered his certificate of entry to plaintiff, with his surrender written thereon, and on April 6, 1878, plaintiff, with his consent, filed the same in the land-office mentioned. Under the rules of the general land-office at Washington, the officers of the Worthington land-office were required to notify plaintiff when the entry was cancelled, and until cancellation no new entry could be made. The right to this notice gave the party entitled to it an opportunity to secure a priority or preference as to a new filing, for himself or such person as he might direct. On June 13, 1878, defendants, Hanson and Johnson, entered into an agreement with plaintiff, by the terms of which he was to procure a cancellation of Holm's entry, and then enter the land under the timber-culture acts for Hanson's benefit. In consideration of this agreement, defendants executed a note for $200, upon which the present suit is brought. Holm's entry was cancelled July 1, 1878. On July 2, 1878, plaintiff filed with the register of the Worthington land-office an affidavit, and paid a fee of $10, as prescribed by U. S. Rev. St. § 2465. This was done in the name of and for the use and benefit of Han-

son, the effect being to entitle him "to enter the quantity of land specified." At the time of the agreement and of the execution of the note, Hanson knew that Holm had surrendered his certificate of entry for cancellation on April 6th. Hanson furnished plaintiff $14 to apply on land-office fees. *Held,* that the note is founded on a sufficient and not illegal consideration.

This action was brought in the district court for Nobles county, upon the promissory note mentioned in the opinion, and defendants appeal from the judgment rendered in plaintiff's favor, after a trial by *Farmer,* J., (acting for the judge of the 6th district) without a jury.

The reply alleged "that said defendant Hanson and plaintiff agreed to and with each other that plaintiff should and would obtain from said Holm a surrender and cancellation to the United States of the entry of said Holm on said land, and thereupon, as soon as the said land was open to entry, that plaintiff would and should use due diligence and enter said land, under the timber-culture act, for said defendant Hanson."

*Emory Clark* and *L. S. Nelson,* for appellants, cited Story on Contracts, § 546; *Brisbois* v. *Sibley,* 1 Minn. 190, (230;) *St. Peter Co.* v. *Bunker,* 5 Minn. 153, (192.)

*Daniel Rohrer,* for respondent, cited *Bennett* v. *Kniss,* 27 Minn. 49.

BERRY, J. Prior to April 6, 1878, one Holm had a valid and subsisting entry, at the United States land-office at Worthington, of a certain quarter-section of land, under the timber-culture acts of congress. He had delivered his certificate of entry to the plaintiff, with his surrender written thereon; and on April 6, 1878, plaintiff, with his consent, filed the same in said land-office. Under the rules of the general land-office at Washington, the officers of the Worthington land-office were required to notify the plaintiff when the entry was cancelled. In this instance the entry was cancelled July 1, 1878. On June 13, 1878, defendants, Hanson and Johnson, entered into an agreement with plaintiff, by the terms of which he was to procure a cancellation of Holm's entry, and then enter the land under the timber-culture acts for the benefit of Hanson. In consideration of this agreement upon the part of plaintiff, defendants executed a note for

$200, to recover the amount of which this action is brought. On July 2, 1878, plaintiff (as the court below finds) placed a filing on the land in the name of and for the use and benefit of Hanson, under the timber-culture acts mentioned. Placing a filing we understand to mean filing with the register of the land-office the affidavit, and making the payment of a fee of $10, as prescribed by U. S. Rev. St. § 2465; the effect being to entitle the person for whom such filing and payment are made "to enter the quantity of land specified." At the time of the agreement above mentioned and of the execution of the note, Hanson knew that Holm had surrendered his certificate of entry for cancellation on April 6th. Hanson furnished the plaintiff $14 to apply on land-office fees. No part of the note has been paid. Some other facts are found by the trial court, but they do not seem to us important to be particularly adverted to. As a conclusion of law, the court below found that the contract was a lawful one, and the note a valid and binding obligation. Judgment was entered for the plaintiff accordingly, and defendants appealed.

Defendants insist, first, that upon the findings of fact, the note was without consideration. The state of facts out of which the note arose we take to have been in legal effect this: The plaintiff, having filed Holm's certificate of entry, and his surrender, in the proper local land-office, was entitled, under regulations made by the general land-office, in accordance with U. S. Rev. St. § 2478, to notice of the cancellation of the entry. The right to this notice gave the person filing the surrender an opportunity to secure a priority or preference as to a new filing upon the land, for himself or such person as he might direct. Before a new filing could take effect, it was necessary that the former entry should be cancelled. The plaintiff, being entitled to the notice mentioned, and to the consequent opportunity to secure a priority and preference, agreed, first, to procure the cancellation of Holm's entry, his certificate having been surrendered, but his entry not cancelled. The court below has expressly found that, at the time of making the note and agreement, Hanson knew that Holm had "surrendered his certificate of entry * * * for cancellation, on April 6, 1878." This, although the defendants' counsel think otherwise, cannot mean less than that the surrender had been filed in the local

land-office. Nothing short of that would be a surrender. In these circumstances, the agreement to procure the cancellation could not legitimately have been understood to mean more than that plaintiff, as the person who filed the papers, would throw no obstacle in the way of the cancellation, by withdrawing the surrender, if that was permissible, or otherwise, or that he would do what he could to perfect it within a reasonable time. If what the plaintiff could do in the premises was little or nothing, it is enough to say that it was all that was agreed to be done. Secondly, the plaintiff agreed to enter the land under the timber-culture acts, in the name of, and for the use and benefit of, Hanson. This would not mean more than that, having the right to notice, and the opportunity to secure the priority and preference before mentioned, he was to use the same to Hanson's advantage, and to this end, to see that such steps were taken—to wit, the making and filing of Hanson's affidavit, and the payment of the fee—as were necessary to secure an entry of the land for Hanson. The plaintiff's agreement (subsequently performed) to do this was certainly a sufficient consideration for the note. It was a promise to do something of benefit to Hanson. That it was an inadequate consideration is not important, in the absence of fraud or mistake.

Upon the facts found, we perceive no basis for defendants' second position, viz., that the plaintiff's agreement was illegal. So far as we discern, it was not forbidden by any provision of law, either expressly or by implication, or by any consideration of public policy. We have looked at the cases cited by appellants, but found nothing there to impeach the agreement.

Defendants' third and last point is that the judgment cannot be sustained "under the pleadings." This has special reference to the allegation in plaintiff's reply. As there is no settled case or bill of exceptions presented, the evidence and the proceedings upon the trial are not before us. Hence, we are in no position to inquire whether, in the respects in which the findings vary from the allegation of the plaintiff's pleadings, there was error or not.

Judgment affirmed.